UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GINGER L. REAY, | ) No. ED CV 08-00469-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") erred in

|   |   |   |
|---|---|---|
| 1 |   | rejecting the residual functional capacity ("RFC") |
| 2 |   | assessment of treating orthopedist Salazar; |
| 3 | 2. | Whether the ALJ erred in refusing to credit the residual |
| 4 |   | mental functional capacity assessments of treating |
| 5 |   | psychiatrist Russell or consultative psychiatrist Singer; |
| 6 |   | and |
| 7 | 3. | Whether the ALJ erred in finding Plaintiff's subjective |
| 8 |   | complaints to be not credible. |

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded for a new hearing.

**I**

**THE ALJ ERRED IN REJECTING THE ASSESSMENT**

**OF TREATING ORTHOPEDIST SALAZAR**

**A.  Summary of Orthopedic Evidence**.

In 1987, when Plaintiff was 16, she was involved in a head-on automobile collision which required that she undergo six surgeries within a two-month period following the accident. What has ensued in the following years has been a history of ongoing and recurring pain which she has attempted to treat. (See, generally, Plaintiff's testimony at AR 311-343.) She has been regularly prescribed pain medications such as Vicodin and Darvocet. (AR 320-322.) In December 2006, she underwent surgery on her right knee, but suffers pain from

metal instruments remaining in the bone from the surgery. (AR 334.) Her daily activities ("ADL") are limited due to her pain. (AR 324-25, 336, 317.) Her pain has caused her ongoing depression, and she has taken various medications to address this. (AR 339.)

Plaintiff has several treating physicians. Her internist is Dr. Quion, whom she has seen since October 2000. Dr. Quion has diagnosed depression and/or bipolar disorder and has prescribed various psychotropic medications. (AR 121-27.)

Plaintiff has post-traumatic degenerative changes in her left ankle. (AR 132-33.)

Plaintiff has also been treated at the Desert Valley Medical Group since June 2, 2005. (AR 147-48.) On June 30, 2005, Dr. Pautz, a doctor of osteopathy, examined her and diagnosed traumatic degenerative joint disease of the right knee; right knee pain; traumatic degenerative joint disease of the left ankle; left ankle pain; fascial hernia of the right leg; and bilateral femoral fractures, healed. (AR 144-45.)

On January 23, 2006, Plaintiff received an orthopedic consultative examination ("CE") at the request of SSA by Dr. Altman. (AR 195-99.) Dr. Altman assessed that Plaintiff's ability to push, pull, lift and carry would be limited to 20 pounds occasionally and 10 pounds frequently; that she could walk and stand for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; that her postural activities can be done on an occasional basis and her agility-related activities are limited to an occasional basis. Gross and fine manipulative abilities were unrestricted. (AR 199.)

On April 6, 2006, Plaintiff was examined by orthopedist Dr. Salazar, at Kaiser, to evaluate chronic pain and stiffness in her

right leg and left ankle. (AR 298-99.)  Dr. Salazar also examined Plaintiff on July 21, 2006, and on November 2, 2006, he completed an Impairment Questionnaire. (AR 259-65.)  Therein, Dr. Salazar diagnosed severe osteoarthritis of Plaintiff's right knee and the left subtalar joint, and indicated limited ranges of motion in the right knee, joint tenderness in the right knee, mild swelling in the right knee and enlargement, limping in her right leg, muscle atrophy in her right thigh, muscle weakness at her right quadriceps, and gross crepitus in her right knee. (AR 259-260.)  Dr. Salazar offered a functional assessment that Plaintiff could sit no more than three hours; stand/walk no more than one hour; that she would have to get up and move around for about 15 minutes every hour; that she could not lift more than ten pounds occasionally or carry more than five pounds occasionally; that she would have difficulty walking stairs, kneeling or squatting. (AR 260-62.)  Dr. Salazar also concluded that due to Plaintiff's depression, she can tolerate low stress in the work environment. (AR 263.)  He noted that Plaintiff's pain, fatigue and other symptoms are severe enough to interfere frequently with her attention and concentration. (Id.)

   On December 8, 2006, Dr. Wiley diagnosed right hip tenderness; limited hip motion; positive straight leg raising; positive tenderness, mild swelling, and ecchymosis of the tibia region. (AR 285.) Because of painful retained hardware in Plaintiff's right femur and tibia, and the internal derangement of the right knee, Dr. Wiley performed a right knee arthroscopy wherein he removed four screws from the right tibia although he was unable to remove hardware from the right femur because it was too deeply embedded in the bone. (AR 275-77.)  Post-operative followup on December 21, 2006 indicated medial

pain, a significant amount of arthritic change in the knee joint, and Plaintiff complained at that time of some pain and some "catching" within the medial portion of the knee. (AR 268-69.)

**B.    The ALJ's Decision Regarding Orthopedic Issues**.

The ALJ adopted the functional capacity assessment of the CE, Dr. Altman, in particular finding that Plaintiff can lift and/or carry ten pounds frequently and 20 pounds occasionally; that she can stand/ walk two hours a day and sit for six hours a day with a sit/stand option at will every 30 minutes.  Certain non-exertional limitations were also found. (AR 24-25.)

In making the RFC finding, the ALJ specifically rejected the functional assessment found by treating physician Dr. Salazar.  The reasons, as specifically articulated in the decision, are summarized as follows:

1.  Dr. Salazar's opinions as set forth in the Impairment Questionnaire (along with the opinion of treating physician Dr. Quion) "appear to be an attempt to assist the claimant in obtaining disability benefits" (AR 26);

2.  Dr. Salazar's opinions in the Impairment Questionnaire are inconsistent in that he indicates Plaintiff can stand/walk for less than one hour out of eight, although he also indicates she must get up and move around every hour for 15 minutes (Id.);

3.  Dr. Salazar's assessments are based in large part upon Plaintiff's self-reports, and Plaintiff is less than fully credible;

4.  During the hearing, Plaintiff did not appear to be in pain

|   |   |   |
|---|---|---|
| 1 |   | and appeared to sit comfortably (<u>Id</u>.); |
| 2 | 5. | Dr. Salazar only saw Plaintiff two times, the last being |
| 3 |   | three months before he signed the Impairment Questionnaire |
| 4 |   | (<u>Id</u>.); |
| 5 | 6. | Dr. Salazar's assertion that Plaintiff cannot lift more than |
| 6 |   | ten pounds is not supported by medical evidence in the |
| 7 |   | record, in that Plaintiff has no upper extremity |
| 8 |   | limitations. |

(AR 26-27.)

### C. <u>Analysis</u>.

The law regarding evaluation of the opinions of treating physicians, and the manner in which such opinions should be evaluated when there are contradictory opinions by a consultative examiner based on independent clinical findings, are well known. Certainly, an ALJ must articulate specific and legitimate reasons based on substantial evidence in the record in order to reject the treating physician's opinions. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002). While the Commissioner argues to this Court that Dr. Salazar's opinion should be depreciated because he only treated Plaintiff on two occasions, such an assertion is rejected. The Commissioner's own regulations do not support such an argument. (<u>See</u> 20 C.F.R. §404.1502.) This argument is especially unpersuasive because the Commissioner argues that more weight should be given to the opinion of the CE, who examined Plaintiff on only one occasion.

More importantly, the reasons set forth in the decision for depreciating Dr. Salazar's opinion are, in combination, factually unsupported, analytically slushy, speculative, and reflective of a

failure of neutral evaluation. Specifically, the ALJ's statement that Dr. Salazar's assessments are based in large part upon Plaintiff's self-reports is woven from whole cloth, because nothing in the record supports that. The Commissioner concedes the point. (See JS at 22.) Next, while the Commissioner argues that the CE's opinion was consistent with other evidence in the record, the Court, to the contrary, finds that the treating physician's opinion is consistent with other medical evidence in the record. Plaintiff's joint impairments, along with her pain, have been consistently and well documented by various medical practitioners. The Court fails to see how the opinions of other treating and examining sources in the record are more supportive of the functional assessment rendered by the CE than that provided by Dr. Salazar.

Also troubling are the ALJ's statements that Dr. Salazar's opinion is internally inconsistent based on some arithmetic calculation concerning Dr. Salazar's conclusion that Plaintiff must get up and move around every hour for 15 minutes, as being inconsistent with the doctor's statement that she can stand and/or walk for less than one hour out of eight. At best, if the ALJ felt that his arithmetic calculations had revealed a possible inconsistency, in view of the seriousness of the matter, and the obvious fact that Dr. Salazar rendered his conclusions based on clinical testing, the ALJ should have contacted Dr. Salazar to resolve any perceived conflict.

The ALJ's conclusion that Dr. Salazar's limitation concerning Plaintiff's ability to lift is inconsistent with the lack of findings of any upper extremity limitations is speculative. This is a medical conclusion, and the ALJ's apparent finding that lifting limitations

must be related to upper extremity impairments is not something within the expertise of a lay person. Again, if the ALJ perceived any inconsistency, he should have re-contacted the treating source.

The Commissioner argues that it was within the ALJ's province to interpret Dr. Salazar's findings and to resolve conflicts in the testimony. While that may be a correct general statement of the law, the fact is that the analysis performed as reflected in the decision is entirely inadequate and internally inconsistent. Moreover, the ALJ's statement that Dr. Salazar's conclusions appear to be an attempt to assist Plaintiff to obtain disability benefits, combined with his factually unsupported conclusion that Dr. Salazar based his opinion on Plaintiff's self-reporting, reflect a possible bias which requires reassignment of this matter to a new ALJ upon rehearing. This Court simply cannot be confident that the ALJ can objectively analyze the orthopedic medical evidence in this case based upon these statements in the decision.

Since this matter will be remanded for a new hearing, the Court elects to not specifically address Plaintiff's second and third issues, other than to state that the factual findings and the conclusions reached by the ALJ in the current decision concerning these matters will have no precedental value. These issues will be addressed de novo at a new hearing.

For the foregoing reasons, this matter will be remanded for further hearing.

**IT IS SO ORDERED**.

DATED: January 9, 2009                    /s/
                                   VICTOR B. KENTON
                                   UNITED STATES MAGISTRATE JUDGE